ACCEPTED
13-14-00496-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/26/2015 3:38:38 PM
CECILE FOY GSANGER
CLERK

**No. 13-14-00496-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/26/2015 3:38:38 PM
CECILE FOY GSANGER
Clerk

**THE STATE OF TEXAS,
APPELLANT,**

**v.**

**BENJAMIN DELAROSA,
APPELLEE**

_____

ON APPEAL FROM COUNTY COURT AT LAW 2

NUECES COUNTY, TEXAS

_____

**APPELLEE'S BRIEF**

John Gilmore
State Bar No. 07958500
622 S. Tancahua
Corpus Christi, Texas 78401
(361) 882-4378
(361) 882-3635 (fax)

# Table of Contents

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 7

Analysis and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
I.  Response to Third Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      A.Burden of proof and standards for review . . . . . . . . . . . . . . . . 12
      B.Affiant Made Material, False Statements Regarding Whether
         Appellee Operated Vehicle . . . . . . . . . . . . . . . . . . . . . . . . . 15

II. Response to First and Second Issues . . . . . . . . . . . . . . . . . . . . . . . 19
      A.Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      B.Standard of review and applicable law . . . . . . . . . . . . . . . . . . 21
      C.Mandatory Blood Draw . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
         1. Section 724.012 is not and exception to 4th amendment . 25
         2. The State cannot meet 724.012 requirements . . . . . . . . 27
         3. Section 724.011 implied consent not presented to court . . 28

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# Index of Authorities

**Cases**

*Alford v. State*, 400 S.W.3d 924 (Tex. Crim. App. 2013) . . . . . . . . . . 13, 28

*Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007) . . . . . . . . 12, 22

*Armendariz v. State, 123 S.W.3d 401 (Tex. Crim. App. 2003) . . . . . 13, 28*

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . 10, 14

*Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) . . . . . . . . 21

*Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006). . . . . 13

*Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) . . . . . . . 31

*Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) . . . . . . . . . 14

*McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014) . . . . . . . 14

*Missouri v. McNeely*, 133 S.Ct 1552 (2013) . . . . . . . . 10, 20, 22, 23, 26, 30

*Ornelas v. United States*, 517 U.S. 690, 699 (1996) . . . . . . . . . . . . . . . . 13

*Schmerber v. California*, 384 U.S. 757, 770 (1966) . . . . . . . . . . . . . . . . 22

*State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006) . . . . . . . . 12, 21

*State v. Laird*, 38 S.W.3d 707 (Tex. App.–Austin 2000, pet. ref'd) . . . . . . 27

*State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) . . . . . . . . . . 31

*State v. Mosely*, 348 S.W.3d 435 (Tex. App.–Austin 2011, pet. ref'd) . . . 27

*State v. Rhinehart*, 333 S.W.3d 154, 162 (Tex. Crim. App. 2011) . . . . . 31

*State v. Rodriguez, 2015 Tex. App. LEXIS 6132 (Tex. App. Corpus Christi June 18, 2015)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23*

*State v. Villarreal*, No. 13–13– 00253–CR, __ S.W.3d __, __, 2014 WL 1257150 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted) . . . . . .25

*State v. Villarreal*, No. PD–0306–14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) . . . . .. . . . . . . . . . . . . . . . . . . . . . . 26, 31, 33

*Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004) . . . . . 13

*United States v. Ventresca*, 380 U.S. 102, 106 (1965) . . . . . . . . . . . . . . 13

*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). . . . . . . . 12

*Weems v. State,* 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) . . . . 13, 18

**Statutes**

TEX. TRANSP. CODE ANN. § 724.011 . . . . . . . . . . . . . . . . . . . . . . 28, 29

TEX. TRANSP. CODE ANN. § 724.012 . . . . . . . . . . 24, 25, 26, 27, 28, 29

## Summary of the Argument

The State obtained a blood draw warrant in which the affiant made untrue statements, particularly with regard to the basis of his knowledge that Appellee operated his vehicle. The trial court properly excised those statements and properly determined there is no probable cause supporting the search warrant.

A person has a unique expectation of privacy in his own person. Puncturing the skin to extract a blood sample is a search and seizure within Fourth Amendment protections. Such a procedure is highly invasive and intrusive and must be supported by sufficient grounds to pass constitutional muster. A person's blood contains a panoply of personal information concerning his genetic identity, parentage, and medical history, so the seizure greatly impacts a person's privacy interest. That the state might initially only use the blood to determine alcohol concentration does not make the process less intrusive, nor does it negate the prospect of later investigation of the information contained in the blood. The state is required to preserve the biological sample for forty years, so this is anything but a temporary invasion of the privacy.

Statutes may not circumvent the Fourth Amendment in scope, nor may law enforcement violate the Fourth Amendment in the application of that statute. Warrantless extraction of blood samples must be reasonable; therefore, they must meet Fourth Amendment standards of probable cause and exigent circumstances, or such other exception to the warrant requirement, but also must be conducted in a reasonable fashion. It was unreasonable to forego the warrant process when the suspect was in custody and would remain in custody for a period well beyond that required to secure a warrant.

The statute requiring the taking of breath or blood samples must be strictly complied with. That statute in Texas does not mandate the taking of blood. A person may opt to provide a sample of breath, and the statute requires only that a breath sample or a blood sample be taken. There was no indication that Appellee was given the option of providing a breath sample or refused to do the same.

None of the exceptions argued by the State justify the taking of Appellee's blood in this case. There was no showing of express consent. The implied consent statute was not strictly followed, and its application

under the present circumstances was unreasonable under the Fourth Amendment.

The State failed to prove the blood was taken in a reasonable fashion consistent with any recognized exception to the warrant clause.

## Issues Presented

1.     *Whether the trial court erred by denying State's Motion to Reconsider based on its determination that no exception existed to justify a warrantless blood draw under the provisions of the Transportation Code.*

2.     *Whether the trial court erred by granting defendant's motion to suppress because exigent circumstances existed to justify the warrantless blood draw.*

3.     *Whether the trial court erred by suppressing the blood search warrant under Franks v. Delaware based on its determination that Officer Gary Williams made false statements on the affidavit for search warrant, that the false statements should be excised from the affidavit, and that the search warrant was not sufficient to meet probable cause without the statements.*

## Statement of Facts

Appellee wishes to add the following:

On July 28, 2013, a search warrant was obtained to authorize a search of Defendant's person to obtain a sample of his blood.   (CR 10). The search warrant was based on the affidavit of Gary Williams, an officer with the Corpus Christi Police Department.   (CR 12, attached as Exh. A to Appellee's motion for Franks hearing).

7

On June 24, 2014, Appellee filed a "Motion for Hearing Pursuant to Franks vs. Delaware" specifically alleging that the warrant for a blood draw was obtained based on false statements by Gary Williams. (CR 10). Specifically, Appellee claimed "the allegation that Lt. Broyles 'observed the suspect operating a motor vehicle . . . .immediately before my contact with the suspect' is false." (CR 10). The affidavit of Gary Williams specifically states, "A witness, *CCPD Lt. Broyles* [in handwriting] told me that the witness observed the suspect operating a motor vehicle in a public place in Nueces County, Texas immediately before my contact with the suspect." (CR. 12, G. Williams affidavit attached to search warrant).

At the hearing on Appellee's motion, Lt. Broyles testified he was two miles away from the accident when it occurred. (RRv2 at 13). He did not see either driver operating their vehicles, including Appellee. (Id. 13-14). He also testified that good samaritans on the scene before he arrived had not seen the crash either. (Id.). He could not testify as to who was driving. (RRv2 15).

Officer Williams also testified he had not personally observed Appellee operating a vehicle that night. (RRv2 at 34). He also testified that the good samaritans at the scene said they did not see the crash or him

8

behind the wheel. (RRv2 at 36). He was also aware that Officer Broyles did not see the accident. (Id.). Nevertheless, Officer Williams testified that the statement in his affidavit, "a witness, Corpus Christi Police Department, Lieutenant Broyles, told me that the witness observed the suspect operating a vehicle in a public place" is not a false statement even though he was aware that Broyles did not observe Appellee operating a motor vehicle. (RRv2 at 37).

Officer Williams also denied that section 8 of the search warrant was false, because that is how he was told to fill out the form. (Id.). Section 8 of his affidavit stated "Subject was driving a motor vehicle . . ..: (CR 13). Nevertheless, Officer Williams admitted he did not see Appellee driving the vehicle. He was also aware that no witness saw him driving the vehicle. (Id. at 38).

Officer Williams admitted that Appellee did not consent to the blood draw. (RRv2 at 38). He acknowledged that Appellee was unconscious and was not able to refuse or say yes. (Id.).

The trial court found, "There is no evidence before the court that [Appellee] was the operator." (RRv3 at 7). The trial court also found "CCPD Officer Gary Williams made false statements in the search warrant

9

affidavit and that such false statements should be excised from the affidavit." (CR 20, Order dated August 1, 2014, the day after the evidentiary hearing on the Franks Motion).[1] This means that the trial court found both Section 8 and Section 5 to be false statements, especially as to whether Appellee was operating a motor vehicle. The trial court further found that "once such false statements are removed from the affidavit, the affidavit does not contain sufficient probable cause for the issuance of the warrant to seize Defendant's blood." (Id.).

The State filed a "Motion to Reconsider" asking for a "full hearing" on "the applicability of a mandatory warrantless blood draw in this case." (CR 16-17). Appellee replied that mandatory blood draw provisions do not excuse the necessity of obtaining a warrant without exigent circumstances and the natural dissipation of alcohol in a person's blood by itself is insufficient to constitute exigent circumstances. (CR 21-22, citing *Missouri v. McNeely*, 133 S.Ct 1552 (2013)). Appellee further argued that the fact

---

[1] The State claims, without a cite to the record, that the trial court "ruled that the statement made by Officer Williams in Section 5 of his affidavit for search warrant was false and should be excised under Franks v. Delaware." (State's Brief at 10). However, no such limit to her ruling was giving in her order. (CR 20). The finding is that "CCPD Officer Gary Williams made false statements in the search warrant affidavit and that such false statements should be excised from the affidavit." (CR 20). The judge simply believed there was no basis for his conclusion that Appellee operated the motor vehicle. (RRv3 at 7).

that law enforcement officers obtained a warrant invalidates the argument that there was an exigency preventing them from obtaining a warrant. (Id.).

After a hearing on August 13, 2014 and considering additional evidence presented by the State, the trial court maintained its ruling of August 1, 2014 and granted Appellee's motion to suppress. (CR 23, August 19, 2014 Order of trial court). The court agreed in its written order that because Officer Williams had obtained a warrant in this case, there could be no exigency. (Id.). The trial court also stated on the record, "The operator, number one, one(b)(1) is what I'm having a problem with." (RRv3 at 11).

## ANALYSIS AND ARGUMENT

## I.    RESPONSE TO THIRD ISSUE

In its third issue the State argues that the trial court erred by suppressing the blood draw search warrant. (State's Brief pp. 25-28). It challenges the trial court's finding that "CCPD Officer Gary Williams made false statements in the search warrant affidavit and that such false statements should be excised from the affidavit." (CR 20, Order dated August 1, 2014, the day after the evidentiary hearing on the Franks Motion). The State further argues that what the trial court labeled "false

11

statements" is simply a single "misstatement" by Officer Williams as to "a mistake of permitted procedure" and is not a material misstatement. (State's Brief at 15, 27-28). However, this ignores the findings and statements by the trial court, as discussed above.

## A. Burden of Proof and Standard of Review

The court is to apply a bifurcated standard of review to the trial court's ruling on a motion to suppress evidence. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The reviewing court affords almost total deference to the trial court's determination of historical facts and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing Guzman, 995 S.W.2d at 89). The reviewing court reviews de novo mixed questions of law and fact that do not depend upon credibility and demeanor. *Id.*

When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The reviewing court will uphold the trial court's ruling under any applicable theory of law supported by the facts of

the case whether we infer the fact findings or consider express findings. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). Similarly, regardless of whether the trial court has made express conclusions of law, the reviewing court upholds the trial court's ruling under any theory supported by the facts because an appellate court reviews conclusions of law de novo." Id. Under de novo review, the reviewing court is not required to defer to a trial court's particular theory. Id. This "rule holds true even if the trial court gave the wrong reason for its ruling." *Armendariz v. State,* 123 S.W.3d 401, 403 (Tex. Crim. App. 2003).

The trial court is the sole trier of fact, the judge of witness credibility, and the weight to be given to witness testimony. *Id.* A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009); *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

Ordinarily, the preference for searches based upon warrants requires reviewing courts to give "great deference" to a magistrate's determination of probable cause. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); see also *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). "[I]n

a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca*, 380 U.S. 102, 106 (1965); see also *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012) ("'[T]he magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'").

However, that deference to the magistrate is not called for when the question becomes whether an affidavit, stricken of its tainted information, meets the standard of probable cause. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). This is, in part, because a "magistrate's judgment would have been based on facts that are no longer on the table," and there is "no way of telling the extent to which the excised portion influenced the magistrate judge's determination." Id.

When a court reassesses a search warrant affidavit with the allegations found to be false in the context of a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) excised, a doubtful or marginal case for probable cause should be resolved in the defendant's favor.  Id. at 20, n.17. (citing Wayne R. LaFave, 2 Search and Seizure: A Treatise on the Fourth Amendment § 4.4(c), at 696 & n.73 (5th ed. 2012)).

**B. Affiant Made Material, False Statements Regarding Whether Appellee Operated Vehicle**

Without the false, excised statements regarding the basis for Williams' belief Appellee operated a vehicle, there is no probable cause in the affidavit for the search warrant that Appellee operated a vehicle.

Officer Williams swore in his affidavit supporting the search warrant in several places that Appellee operated a motor vehicle even though he knew no one observed Appellee operating the vehicle. For example, he stated, "The suspect was operating a motor vehicle in a public place in Nueces County, Texas on the above date based on the following facts: A witness, (name & address & phone no.) *CCPD LT Broyles* [Italicized because hand written into form] told me that the witness observed the suspect operating the motor vehicle in a public place in Nueces County, Texas immediately before my contact with the suspect." (CR 12) (emphasis added).

AFFIDAVIT FOR SEARCH WARRANT

Offense No. 13 0628 0018

STATE'S
EXHIBIT
1
14-1493-2

THE STATE OF TEXAS                    {

COUNTY OF NUECES                      {

The undersigned Affiant, being a peace office under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:

My name is G. Williams _____. I am a peace officer employed by the following law enforcement agency: Corpus Christi Police Department.

I have been a certified police office for 20 years. My training has included detection and recognition of persons who are intoxicated.

1.    There is in Nueces County, Texas a suspected person ("suspect") described as follows:

Name: Delarosa, Benjamin _____

Race: W          Sex: M          D.O.B: 5-18-85

Height: 5'11"    Weight: 200 lbs    Hair Color: BRO

S.I.D.: _____

2.    Suspect is presently in custody of the Corpus Christi Police Department, which will present the suspect to execute the warrant requested herein.

3.    The suspect has possession of and is concealing human blood, which constitutes evidence that the suspect committed the offense described in paragraph 4 below.

4.    On or about the 28 day of July _____, 20 13, at approximately 200 a.m/p.m. (circle one), the suspect did then and there operate a motor vehicle in a public place in Nueces County, Texas while intoxicated, that is, by not having the normal use of mental or physical faculties by reason of the introduction of alcohol, controlled substance, drug, or a dangerous drug, a combination of two or more of those substances or any other substance into the body.

5.    The suspect was operating a motor vehicle in a public place in Nueces County, Texas on the above date based on the following facts:

_____ A.    I observed the suspect doing so.

_____ B.    The suspect admitted to me that the suspect had been operating a motor vehicle in a public place in Nueces County, Texas, immediately before my contact with the suspect.

✗ C.    A witness, (name & address & phone no.) CCPD LT Broyles _____

_____

told me that the witness observed the suspect operating a motor vehicle in a public place in Nueces County, Texas immediately before my contact with the suspect.

Effective Date: March 4, 2009

16

The other options on the form are he observed the suspect doing so or that the suspect admitted it. (Id.). He checked neither and instead swore under oath that Broyles told him, which was false. (Id.).

Williams confessed he knew Broyles did not observe Appellee operating a vehicle and that the good samaritans never observed Appellee operating a vehicle. (RRv2 at 36). He also knew medics did not observe Appellee operating the vehicle. Accordingly, the testimony supports the trial court's finding that Williams made materially false statements in his affidavit with regard to the basis of his conclusion Appellee operated a vehicle.

Moreover, Officer Williams did not state additional facts in his affidavit to support his belief that Appellee operated a vehicle. (Id.). For example, in paragraph 8, he could have stated additional facts as to why he believed Appellee operated a vehicle. Instead of facts, he just stated his conclusion. Specifically, he wrote the "additional facts leading me to believe that the suspect was intoxicated while operating a motor vehicle" as simply his conclusion that suspect operated a vehicle at a high speed. (CR 13). He also states medics called him driver, but he knew that no other witnesses observed him driving. In sum, Williams had an opportunity to add his

observations that lead him to the conclusion that Appellee operated a vehicle, but he chose not to do so and instead asked the magistrate to rely on his false statement regarding the basis for his belief Appellee operated a vehicle.

The truth is that Neither Officer Williams nor Broyles could testify as to who was driving or that Appellee operated a motor vehicle. Both officers confessed that neither saw the accident. In fact, Broyles testified he was two miles away from the accident when it occurred. (RRv2 at 13). Both officers also confessed that the good samaritans on the scene before the officers arrived had not seen the crash either. (Id.).

The testimony by the officers supports the trial court's ruling excising the portions of Williams' affidavit which claim that Appellee operated the vehicle. A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009)

Finally, Section 5 of the form is important because it provides the basis for the officer's belief as to whether Appellee operated a vehicle. The State includes that section on the standard form because it is important

18

information for the magistrate to consider in deciding whether to issue a search warrant. If it were not, the State could simply instruct officers to leave that section blank. However, if that section were blank, it is reasonable to assume a magistrate would not issue a search warrant because a reasonable magistrate would like the basis for the officer's belief a person was operating a vehicle. Moreover, if Section 8 does not provide additional facts and simply conclusions, as is the case here, that adds to the importance of Section 5 on the affidavit form. In conclusion, section 5 is vital to the affidavit, as it asks the affiant to provide a basis for his/her belief that the suspect operated a vehicle. Here, the affiant provided a false statement. Accordingly, the trial court's ruling should be upheld, as it is supported by the record.

## II.    RESPONSE TO FIRST AND SECOND ISSUES

### A.    Summary of Argument

In its first and second issues the State argues that, even though there was a warrant obtained in this case, no warrant was required under the Texas Transportation Code. The State argues that either an emergency or implicit consent could have existed here and justified a warrantless blood draw, even though the State obtained a warrant.

The problem with this type of analysis is that the State is trying to go back and create an emergency in a situation where the officer did not initially have one. Here, the officer had time to fill out his form affidavit (albeit falsely) and submit it with a warrant to a magistrate at the City Detention Center. Accordingly, the State is not going to have anything to support an emergency.

Nevertheless, it tries. The State argues that the exigent circumstance was that Appellee "was not conscious to consent to blood draw" once law enforcement made the decision to obtain blood (State's Brief at 24) (without record cite). Also, Appellee was unlikely to awaken in the future to consent or refuse consent. (Id. ) (without cite to record).

Appellee objects to this argument as inadequately briefed. See TEX. R. APP. P. 38.1(i). The State does not cite a case with these specific circumstances nor does it cite references to these facts in the record. (State's Brief at 24). Instead it cites to general principles in *McNeely* and *Schmerber* without a legal analysis. (Id. at 23-24).

The trial court had issues with the fact that no exigent circumstances existed, as the State had time to obtain a warrant. (CR 23) (Second Order). The problem with the State's argument is that a unconscious man

in the hospital gives the State sufficient time to obtain a warrant, as his condition is not likely to immediately change. In fact, the State had sufficient time to obtain a warrant. Thus, it is not an emergency.

The trial court here also had issues with applying mandatory blood draw provision due to the lack of evidence that Appellee operated a vehicle. (RRv3 at 7, 11).

The State did not argue implied consent in the trial court. (See RRv2 and RRv3). It was also not presented in its motion for reconsideration. (CR 16-17). Accordingly, the trial court did not discuss the officer's testimony that Appellee did not consent to the blood draw. (RRv2 at 38). Implied consent laws are also subject to fourth amendment restrictions, as discussed in more detail below.

## B. Standard of Review and Applicable Law

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Id.; see also Kelly*, 204 S.W.3d at 819 n.22 (noting that in the context of a case alleging

assault in a blood draw that "[i]t is important to note that appellee had the initial burden to produce evidence to support a finding that she did not consent to . . . [the] blood draw"). Once a defendant establishes there was no warrant, the burden shifts to the State to prove the warrantless search was reasonable under the totality of the circumstances. *Amador*, 221 S.W. 3d at 672–73. The State satisfies this burden if it proves an exception to the warrant requirement. See *Gutierrez*, 221 S.W.3d at 685.

"Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 133 S.Ct. at 1563. In *Schmerber*, the United States Supreme Court held that the evidence showed that the police officer reasonably believed that an emergency existed because the delay in seeking or obtaining a warrant would result in the destruction of evidence. *Schmerber v. California*, 384 U.S. 757, 770 (1966). The court relied on evidence in the record that the alcohol in the blood dissipates and stated,

> Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

Id. at 770–71. In *McNeely*, the United States Supreme Court stated that in *Schmerber* it had determined that the warrantless blood test was reasonable after considering all of the facts and particular circumstances in that case and its analysis "fits comfortably within [its] case law applying the exigent circumstances exception" to the warrant requirement. *McNeely*, 133 S.Ct. at 1560.

In *McNeely*, the State argued that "whenever an officer has probable cause" that an individual is driving under the influence of alcohol there are exigent circumstances because blood alcohol evidence is inherently evanescent. *Id.* And, "[a]s a result, . . . so long as the officer has probable cause and the blood test is conducted in a reasonable manner, it is categorically reasonable for law enforcement to obtain the blood sample without a warrant." Id. The *McNeely* court rejected the State's argument and held that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." Id. at 1561. The *McNeely* court explained

> We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of

alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test. That, however, is a reason to decide each case on its facts, as we did in *Schmerber*, not to accept the 'considerable overgeneralization' that a per se rule would reflect.

Id.

Section 724.012 of the Texas Transportation Code states in pertinent part that "[a] peace officer shall require the taking of a specimen of the person's breath or blood under any of the [listed] circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily." TEX. TRANSP. CODE ANN. § 724.012 (emphasis added). The applicable subsection states that an officer must take the person's blood if "the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident" either "any individual has died or will die," "an individual other than the person has suffered serious bodily injury" or "an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment." Id. § 724.012(b)(1).

**C.    Mandatory Draw Under Transportation Code**

***1.    Section 724.012 is Not an Exception to 4th Amendment***

The State contends that the Transportation Code provides exceptions to the constitutional warrant requirement. Specifically, the State argues that "a blood draw could have been obtained by relying upon the mandatory blood draw provision in question [Section 724.012], along with the absence of withdrawal of consent." (State's Brief at 20).

This Honorable Court has already determined that the Legislature did not mean to circumvent the Fourth Amendment's requirement that the police officer acquire a warrant prior to acquiring a blood sample after the suspect refuses to provide a specimen regarding another portion of the mandatory blood draw statute. *See State v. Villarreal*, No. 13–13– 00253– CR, __ S.W.3d __, __, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted). The court of criminal appeals affirmed the decision stating, "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement" and "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in

the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *State v. Villarreal*, No. PD–0306–14, 2014 WL 6734178, at **20–21 (Tex. Crim. App. Nov. 26, 2014, pet. granted).

This Honorable Court also concluded that section 724.012 of the Transportation Code does not by itself form a constitutionally recognized exception to the warrant requirement. *State v. Rodriguez,* 2015 Tex. App. LEXIS 6132 (Tex. App. Corpus Christi June 18, 2015). Instead, under *McNeely*, each case must be evaluated on a case-by-case basis. See *McNeely*, 133 S.Ct. at 1560.

Here, the officer actually obtained a warrant based. In *Rodriguez* the officer did not attempt to get a warrant because he was relying exclusively on the mandatory blood draw provision. The United States Supreme Court stated that if an officer can take steps to secure a warrant while the suspect is being transported to a hospital by another officer, there would be no plausible justification for an exception to the warrant requirement. *McNeely*, 133 S.Ct. at 1561.

In *Weems v. State*, the reviewing court found no exigency despite evidence that there had been an accident, the passenger had been injured,

and the defendant had been transported to the hospital. 434 S.W.3d 655, 666 (Tex. App.—San Antonio 2014, pet. granted). In *Weems*, just as here, the officer had time to get a warrant. Accordingly, the trial court did not abuse its discretion by concluding that the State failed to establish that an exigency existed.

### 2. The State Cannot Meet 724.012 Requirements

Finally, the State did not comply with the Transportation Code requirements, if the reviewing court defers to the trial court's finding of fact that Appellee did not operate the vehicle. In the absence of a valid search warrant or actual consent, full compliance with Chapter 724 is required, even though the sample is taken from the arrested suspect with probable cause under exigent circumstances. *State v. Mosely*, 348 S.W.3d 435, 442 (Tex. App.–Austin 2011, pet. ref'd) (stating that warrantless blood draw under Chapter 724 is legal only if the arrest is supported by probable cause); *State v. Laird*, 38 S.W.3d 707, 713-14 (Tex. App.–Austin 2000, pet. ref'd) ("Texas courts require full compliance with the provisions of Chapter 724 when a blood sample is taken from an arrested suspect even though exigent circumstances exist."). Here, the State was required to prove Appellee operated the vehicle. TEX. TRANSP. CODE ANN. § 724.012

In addition, the fact that Officer Williams did not acquire appellee's refusal prior to taking the blood draw is undisputed, and the only evidence presented by the State establishes that there was no refusal to provide a specimen. Section 724.012 requires that "the person refuses the officer's request to submit to the taking of a specimen voluntarily" prior to the mandatory blood draw. TEX. TRANSP. CODE ANN. § 724.012 (emphasis added). Therefore, as a matter of law, Officer Williams did not properly acquire appellee's blood sample pursuant to section 724.012. Accordingly, the trial court did not abuse its discretion by granting appellee's motion to suppress. *See Alford*, 400 S.W.3d at 929 ("Even if the trial court had limited its conclusion of law to a particular legal theory, an appellate court would not be required to defer to that theory under its de novo review."); *Armendariz*, 123 S.W.3d 401 at 403 (holding that this "rule holds true even if the trial court gave the wrong reason for its ruling.").

### *3.* *Section 724.011's Implied Consent Not Presented at Trial*

Citing section 724.011 of the Texas Transportation Code, the State argues that pursuant to "the implied consent statute," a person is deemed to have consented to the taking of one or more specimens of the person's blood for analysis to determine its alcohol content if that person is

28

intoxicated and "is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place." See TEX. TRANSP. CODE ANN. § 724.011 (West, Westlaw through 2013 3d C.S.). The State asserts that anyone who operates a motor vehicle has impliedly consented to a blood draw.

The State did not argue implied consent in the trial court. (See RRv2 and RRv3). Specifically, the prosecutor argued as follows:

> But the reason I mention that Judge is because in this particular case, what we're arguing is that there is an exception, a mandatory blood draw exception where a warrant is not required. And that exception goes beyond the four corners of the blood warrant in this case. In fact, it basically treats it as if there was no warrant in this case. And we would **[p 11]** argue that under 724.012, even if there was no warrant in this case, there was -- basically the ability to get a mandatory blood draw in this case. There is circumstantial evidence of operation within Officer Williams' report. Additionally, as he testified last week, it was Mr. DeLaRosa's vehicle. He was by the vehicle. He had injuries that required hospitalization. He was disoriented. Appeared intoxicated. Basically there was a variety of circumstantial evidence that the officer had which rises to the level of probable cause to believe that Mr. DeLaRosa had been driving. Basically, a reasonable grounds as 724 requires that
> Mr. DeLaRosa was driving the vehicle.
> Based on that, in Section 724.012(b)(c), I
> believe it is, (b)(1)(c), Judge, because Mr. Sutherland, as supported by --
> THE COURT: Yeah, I don't have any problem with that. The operator, number one, on (b)(1) is what
> I'm having a problem with.
> MR. BROWN: Okay. So Judge, I basically

29

would argue that the officer, based on his investigation of the scene, had enough reasonable grounds to believe that Mr. DeLaRosa was the driver of the vehicle and meets all the other elements of that. I know in his response, Mr. Gilmore essentially argued the case law on **[p 12]** the McNeely Supreme Court case. And understandably, I can't cite any Texas case that would support the constitutionality of this case because all the case law post McNeely has generally been in support of his contention. All I would argue, Judge, is that it's important to get this on the record because the Court of Criminal Appeals has not decided this yet. So if we have this on the record, if obviously they say mandatory blood draws do fall into one of the exceptions to the search warrant, we've got this evidence for their consideration. If they rule that it's not an exception, obviously this becomes a moot point. I just simply wanted to add this additional information to the record so that it could be considered in any future proceedings.

(RRv3 pp.11-13). The argument regarding implied consent was not presented in its motion for reconsideration. (CR 16-17). Accordingly, the trial court did not discuss the officer's testimony that Appellee did not consent to the blood draw. (RRv2 at 38).

Thus, to the extent that the State now makes this argument, Appellee objects that it does not comport with its argument to the trial court. *See Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996) (explaining that the grounds raised on appeal must comport with the objections made before the trial court). Moreover, a reviewing court cannot reverse the trial court's judgment on grounds not presented to it. *See State v. Rhinehart*, 333 S.W.

3d 154, 162 (Tex. Crim. App. 2011) (stating that "ordinary rules of procedural default" apply to "losing party" in trial court); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) ("It is well-settled that . . . it violates ordinary notions of procedural default for a Court of Appeals to reverse a trial court's decision on a legal theory not presented to the trial court by the complaining party.") (quotations omitted); *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (en banc) ("[I]n cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense."). Thus, Appellee asks this Honorable Court to overrule the State's issue to the extent that it argues that "the implied consent statute" required that the trial court deny appellee's motion to suppress.

If this Honorable Court holds the issue is properly presented, then *Villarreal* applies. The court of criminal appeals stated, "the provisions in the Transportation Code do not, taken by themselves, form a constitutionally valid alternative to the Fourth Amendment warrant requirement" and "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent

provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *State v. Villarreal*, No. PD–0306–14, 2014 WL 6734178, at \*\*20–21 (Tex. Crim. App. Nov. 26, 2014, pet. granted). Here, the search was non-consensual even according to the police officer. (RRv2 at 38).

## Prayer

Appellee, Benjamin DelaRosa, respectfully requests this Honorable Court to affirm the ruling of the trial court.

Respectfully Submitted,

John S. Gilmore, Jr.
Attorney at Law
State Bar No. 07958500
622 S. Tancahua
Corpus Christi, TX 78401
Tel: (361) 882-4378

By: /s/ John S. Gilmore, Jr.
John S. Gilmore, Jr.
Attorney for Benjamin DelaRosa

## CERTIFICATE OF COMPLIANCE

I, John Gilmore, certify this brief contains 5,794 words in those matters not exempted by Rule 9 as counted in the Pages application.

By: /s/ John S. Gilmore, Jr.
John S. Gilmore, Jr.

## CERTIFICATE OF SERVICE

This is to certify that on June 26, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Nueces County, 901 LEOPARD STRET, CORPUS CHRISTI, TEXAS 78401, as set forth in Texas Rules Appellate Procedure for delivery of electronically filed documents.

By: /s/ John S. Gilmore, Jr.
John S. Gilmore, Jr.