

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0925-13

**BRADLEY RAY McCLINTOCK, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Having concluded that a Fourth Amendment violation occurred in this cause, the First Court of Appeals held that the trial court should have granted the appellant's motion to suppress. The State now contends that the court of appeals should not have reversed the appellant's conviction without first deciding whether the good-faith exception to the exclusionary rule applied.[1] We granted the State's petition for discretionary review in order to examine whether the court of appeals erred in that respect and also to determine whether

---

[1] *McClintock v. State*, 405 S.W.3d 277 (Tex. App.—Houston [1st Dist.] 2013).

the court of appeals erred in one of the questions it *did* decide, namely, whether after excluding (what it found to be) illegally obtained information from the search-warrant affidavit, the remaining information still served to supply probable cause to search. Concluding that the court of appeals did not err to hold that the balance of the warrant affidavit failed to provide probable cause, we will vacate the judgment of the court of appeals and remand the cause to that court to address the good-faith issue in the first instance.

## FACTS AND PROCEDURAL POSTURE

### In the Trial Court

The appellant was indicted for the offense of possession of marijuana in a quantity of more than five and less than fifty pounds, a third-degree felony.[2] He filed a pretrial motion to suppress the marijuana, challenging the validity of the search warrant whereby police had discovered the marijuana in his house, contending that "the affidavit lacks sufficient underlying circumstances which would permit the conclusion that the alleged contraband was at the location in which it was claimed[.]"[3] The warrant affidavit read, in pertinent part:

I, Ryan Arthur, am your Affiant. I am employed as a peace officer

---

[2] TEX. HEALTH & SAFETY CODE § 481.121(a), (b)(4).

[3] The appellant also alleged that the magistrate had been misled by false representations in the warrant affidavit, and a hearing was held in which evidence was developed beyond the four corners of the affidavit. *Franks v. Delaware*, 438 U.S. 154 (1978). This issue was litigated at the pretrial motion to suppress hearing, but the court of appeals reversed the appellant's conviction on the basis of a lack of probable cause, so the *Franks* issue is not before us. Our present consideration is limited to the information contained in the warrant affidavit.

investigating narcotics offenses for the Texas Department of Public Safety. Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas. Affiant went to this location and found it to be located in Harris County, Texas. See Attached Exhibit A for photograph of the location. Affiant and other peace officers with the Texas Department of Public Safety set up surveillance on this location. During surveillance of this location over the last week of the making of this affidavit, affiant observed the following: the downstairs of this location appears to be a business, there is an open to the public stairway that leads to the upstairs. This set of stairs is located on the backside of the location which is a public parking area for the location/ business. There are no gates, fences or doors that block access to this parking area or to the stairs leading to the door to the 2nd floor. This stairway is open to the public in that it could easily be where a delivery person could or would make deliveries to the upstairs residence area. Affiant has observed a male individual come and go from this location, at hours well before and after the business hours of the business on the first floor. Based on training and experience, Affiant found this to be consistent with possible narcotics activity.

On September 29, 2010, Affiant approached this location. At this time, from the outside of this location, Affiant could smell, what Affiant knows from training and experience to be, marijuana. On this same date at approximately 11:30 pm, Affiant requested the assistance of a narcotics canine at this location. Affiant spoke with and obtained the assistance of Houston Police Department Canine Officer Kristin Uhlin and her canine partner "Sita". Officer Uhlin stated that she and "Sita" are currently certified by the National Narcotics Detector Dog Association, # 48761, for the detection of the odors of marijuana, cocaine and methamphetamine. Affiant observed Officer Uhlin and "Sita" to deploy up to the second floor doorway using the open to the public stairway described above. Officer Uhlin stated to Affiant that at the doorway leading into the second floor of this location, "Sita" gave a positive alert at this location indicating the presence of one or more of the above named controlled substance.

At the motion to suppress hearing, the appellant argued that the police were not entitled to enter the curtilage of his home for the purpose of conducting the dog sniff. The prosecutor answered that a dog sniff does not constitute a search and that, in any event, even removing

the information with respect to the drug dog's alert from the warrant affidavit, there was sufficient information to justify the issuance of the warrant. The trial court denied the motion to suppress. In its written findings of fact and conclusions of law,[4] the trial court found that "the stairway where drug dog Sita alerted, was open to the public, and was not a part of the curtilage of the residence." It concluded "that the 'dog sniff' conducted by trained drug-detecting dog Sita was not a search under the Fourth Amendment[.]" The appellant pled guilty to a reduced charge of possession of marijuana of between four ounces and five pounds, a state-jail felony,[5] and was placed on three years' deferred-adjudication community supervision and assessed a $500 fine, reserving his right to appeal the trial court's adverse ruling on his motion to suppress.

## On Appeal

On direct appeal, the appellant argued that the trial court erred in denying his motion to suppress, maintaining that the dog sniff was the product of an illegal intrusion onto his property for the purpose of obtaining information, in violation of *United States v. Jones*.[6] While his appeal was pending in the court of appeals, the United States Supreme Court

---

[4] *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) ("[U]pon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings.").

[5] TEX. HEALTH & SAFETY CODE § 481.121(b)(3).

[6] 132 S.Ct. 945 (2012).

announced its decision in *Florida v. Jardines*.[7]  On the strength of *Jardines*, the court of appeals held that the information in the warrant affidavit that had been gleaned from the drug sniff was obtained illegally.[8]  Discounting that information from the affidavit, the court of appeals concluded that the remaining information, including Officer Arthur's detection of the smell of marijuana, was insufficient to provide probable cause.[9]  In the court of appeals's view, Arthur failed to specify his exact "location" in the warrant affidavit such that "he actually identified the marijuana smell to be coming from the upstairs apartment, as opposed to another location such as" the business located on the ground floor.[10]  Accordingly, the court of appeals held that the trial court erred to deny the motion to suppress, and it reversed the trial court's judgment and remanded the cause for a new trial.[11]

## On Petition for Discretionary Review

We granted the State's petition for discretionary review in order to examine both of

---

[7] 133 S.Ct. 1409 (2013).

[8] *McClintock*, 405 S.W.3d at 283-84.  In its petition for discretionary review, the State does not challenge the court of appeals's retroactive application of *Jardines* under *Griffith v. Kentucky*, 479 U.S. 314 (1987).  *Griffith* held that new rules for the conduct of criminal prosecutions apply retroactively to all cases pending on direct appeal at the time the new rule is announced regardless of whether they constitute a clear break from past precedent.  *Id*. at 326-28.

[9] *McClintock*, 405 S.W.3d at 284-88.

[10] *Id*. at 286.

[11] *Id*. at 288-89.

the State's grounds for review. In its first ground for review, the State argues that the court of appeals erred to hold that the motion to suppress should have been granted without first considering whether the good-faith exception to the exclusionary rule ought to apply. Relying upon the opinion of the United States Supreme Court in *Davis v. United States*,[12] the State asserts that Officer Arthur conducted the dog sniff in this case in good-faith reliance upon previously binding precedent that held that a canine drug sniff does not constitute a "search" for Fourth Amendment purposes. Under these circumstances, the State contends, the drastic remedy of excluding relevant evidence should not apply.[13] In its second ground for review, the State argues, alternatively, that the court of appeals erred to hold that Arthur's own olfactory detection of the tell-tale odor of marijuana did not suffice to establish probable cause, even discounting the dog-sniff information. We reject the State's second ground for review, albeit for reasons somewhat different than those of the court of appeals, and remand the cause to the court of appeals to consider the good-faith issue in the first instance.

---

[12] 131 S.Ct. 2419 (2011).

[13] *Id*. at 2429 ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."). *See also id*. at 2430-31 ("Our retroactivity jurisprudence is concerned with whether, as a categorical matter, a new rule is available on direct review as a *potential* ground for relief. Retroactive application under *Griffith* lifts what would otherwise be a categorical bar to obtaining redress for the government's violation of a newly announced constitutional rule. * * * Retroactive application does not, however, determine what appropriate remedy (if any) the defendant should obtain. * * * As a result, the retroactive application of a new rule of substantive Fourth Amendment law *raises* the question whether a suppression remedy applies; it does not answer that question.") (citations and internal quotation marks omitted).

**ANALYSIS**

**Residual Probable Cause?**

We need confront the good-faith issue only if we disagree with the State that, even "putting aside" the information derived from the dog sniff from the warrant affidavit, it "nevertheless clearly established probable cause."[14]  In describing his own detection of the odor of marijuana, Arthur stated: "On September 29, 2010, Affiant approached this location. At this time, from the outside of this location, Affiant could smell . . . marijuana."  It is true that in most parts of the warrant affidavit, when Arthur refers to "the location," he seems to mean the building as a whole.  But that is not so evident with respect to the last reference to "the location" that Arthur makes immediately before his description of "the location" from which he purported to smell the marijuana.  Immediately before his description of "the location" from which he smelled marijuana, Arthur described "the location" specifically in terms of the stairway leading up to the residence: "This stairway is open to the public in that it could easily be where a delivery person could or would make deliveries *to the upstairs residence area*.  Affiant has observed a male individual come and go *from this location . . . .*"[15]  Given that this more specific allusion to "the location" seems to pinpoint the top of the stairway, right outside of "the upstairs residence area," Arthur's very next mention in the

---

14

*Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991), *overruled on other grounds by Torres v. State*, 182 S.W.3d 899, 901-02 (Tex. Crim. App. 2005).

15

Emphasis added.

affidavit of "the location"—"the location" from which he smelled the marijuana—might fairly be taken to be a reference to this specific area. Giving the appropriate deference to the magistrate's prerogative to construe search-warrant affidavits in a commonsensical and realistic manner, and affording him the benefit of the doubt in marginal cases in vindication of the Fourth Amendment's preference for warrants,[16] we could easily conclude that the affidavit was at least minimally sufficient to establish that Arthur smelled the marijuana from the top of the stairs outside the residential apartment.

But such deference to the magistrate is not called for here. The magistrate made his assessment of probable cause based upon a warrant affidavit that included far more than Arthur's own detection of the odor of marijuana. He also had the drug dog's alert to rely on, and made his probable cause determination accordingly. When part of a warrant affidavit must be excluded from the calculus, as *Jardines* establishes that the information deriving from the drug-dog sniff in this case must, then it is up to the reviewing courts to determine whether "the independently acquired and lawful information stated in the affidavit nevertheless clearly established probable cause."[17] Arthur's reference to "the location" from

---

[16] *E.g.*, *Jones v. State*, 364 S.W.3d 854, 856-57 (Tex. Crim. App. 2012).

[17] *Castillo*, 818 S.W.2d at 805. *See also United States v. Kolodziej*, 712 F.2d 975, 977 (5th Cir. 1983) (usual deference afforded magistrate's review of warrant affidavit for probable cause not appropriate under circumstances in which the warrant affidavit itself contained tainted information and "the magistrate never considered the affidavit purged of its tainted material"). *Cf.* Wayne R. LaFave, 2 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.4(c), at 696 & n.73 (5th ed. 2012) ("[W]hen a court reassesses a search warrant affidavit with the [allegations found to be false in the context of a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)] excised,

which he smelled the marijuana is sufficiently ambiguous that it cannot be said that, even taken together with the other independently acquired information stated in the warrant affidavit, it *clearly* established probable cause.

## Good Faith Exception to the Exclusionary Rule?

That being the case, the State can prevail only if it can establish that Arthur's good-faith reliance on binding precedent prior to *Jardines* insulates him from ordinary operation of both the federal, and our own statutory, exclusionary rules. Of course, the court of appeals never addressed whether *either* exclusionary rule applies.

Neither party mentioned the good-faith exception to the exclusionary rule in their briefs on direct appeal. The State has raised it for the first time in its petition for discretionary review. Even though we granted the State's petition with regard to that issue, the appellant maintains that the State forfeited the argument when it failed to raise it in the court of appeals. For this proposition, the appellant cites *State v. Mercado*,[18] in which we held that "in cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense."[19] But the State was *not* the appealing party in this case; the trial court

a doubtful or marginal case [for probable cause] should be resolved in the defendant's favor.").

[18] 972 S.W.2d 75 (Tex. Crim. App. 1998).

[19] *Id*. at 78.

denied the appellant's motion to suppress, and the appellant was the appealing party in the court of appeals. Under these circumstances, we have held that the State, as the prevailing party at trial, need not raise a particular argument in favor of the trial court's ruling in a reply brief on appeal as a predicate to later raising it in a discretionary review context.[20] And this is especially true when, as here, the issue that the State would have us address was essentially generated by the lower appellate court's particular manner of disposing of the claim on appeal.[21] The State is not precluded from raising the issue of the proper application of the exclusionary rule for first time on discretionary review.

Typically, however, under such circumstances, "the proper disposition of a petition for discretionary review that correctly asserts that the lower court has failed to consider a complaint as to the propriety of its ultimate disposition is for this Court, in the exercise of its supervisory authority, to remand the cause to the court of appeals to reach a 'decision' on that question in the first instance."[22] Lately we have tempered that practice somewhat, holding that "[t]here are exceptions to our practice of remanding under such circumstances, . . . and

---

[20] *State v. Gobert*, 275 S.W.3d 888, 891-92 n.12 (Tex. Crim. App. 2009).

[21] *Sotelo v. State*, 913 S.W.2d 507, 510 (Tex. Crim. App. 1995) ("We hold that when complaint is made about the propriety, not of the court of appeals 'decision' on the merits of a point of error, but instead of the court of appeals'[s] ultimate disposition of the case in view of its 'decision' on the merits, that complaint is timely made in a motion for rehearing, or even, for that matter, in a petition for discretionary review.").

[22] *Id*.

when the proper disposition of an outstanding issue is clear, we will sometimes dispose of it on discretionary review in the name of judicial economy."[23] But the issue of the proper application of the exclusionary rule to the facts of this case is not remotely clear cut, and we believe that the proper disposition here should be to remand for the court of appeals to address it in the first instance. The parties make a number of substantial arguments in support of their respective positions in this Court, and our resolution of the issue (if any should even be necessary after a remand) would benefit from a carefully wrought decision from the court of appeals.

## CONCLUSION

Accordingly, we vacate the judgment of the court of appeals and remand the cause for that court's further consideration of the case in a manner consistent with this opinion.


DELIVERED:     October 1, 2014
PUBLISH

---

[23] *Gilley v. State*, 418 S.W.3d 114, 119 (Tex. Crim. App. 2014).